## Commonwealth v. Decker.

December 16, 1947.

J. J. Tye, Special Judge.

Eldon S. Dummit, Attorney General, Guy H. Herdman, Assistant Attorney General, and J. A. Inman, Commonwealth's Attorney, for appellant.

R. L. Brown, H. M. Sutton and Joe S. Feather for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Certifying the law.

At the conclusion of the introduction of evidence in appellee's trial for the murder of Henry Shelton, the Court directed the jury to return a verdict of not guilty. Since three others are charged with participating in the commission of the crime, and have not been tried, the Commonwealth's Attorney has brought the record to this Court, requesting a certification of the law for guidance in the future trials.

The death of Henry Shelton occurred in Knox County, in, or on the bank of, Lynn Camp Creek in Beech Hollow near the Whitley County line. No witness testified to having seen him after 7:30 o'clock p. m. on Friday, February 22, 1946. His body, floating face down in the creek, was found by his father, Hiram

Shelton, at about 4:30 o'clock p. m., Saturday, February 23. Mr. Shelton called a neighbor, John D. Williams, who towed the body to the bank of the creek and then called the Coroner. The Deputy Coroner, who is an undertaker, and the Chief of the Fire Department of the City of Corbin answered the call, lifted the body from the creek, and placed it on the bank. The deceased's clothing was loosened and the body was examined by several witnesses.

The evidence for the Commonwealth shows that there were abrasions "all over" the body of the deceased, blue places which looked like finger prints on the neck, scratches on the neck and nose, a large knot on the back of the head; and one witness, a constable, testified that one of the vertebrae near the base of the skull was broken. There was no water in the lungs of the deceased, which showed that he did not meet death by drowning. A beech tree stood on the bank about 15 or 20 yards from where the body was found; there was evidence of a recent fire near the tree, and of several persons having been there recently, either scuffling or otherwise trampling the leaves under the tree. A path 2½ to 3 feet wide, along which all leaves had been removed, extended from the tree to the bank of the creek; there were footprints on both sides of the path, with the prints of the toes of shoes pointing toward the path, evidencing the fact that at least two persons, one on each side of the path, walking sidewise, had dragged a heavy object along the path.

The deceased was seen in possession of more than $100 at about 2:30 o'clock on the afternoon of February 22; there was no money on the body when it was found the following day. Appellee admitted that he, in the company of his alleged accomplices, Ben Alsip, Oma Alsip, and Oscar Perry, Jr., were joined by the deceased at about 3:30 o'clock that afternoon. They procured whisky and food, and proceeded to the beech tree we have mentioned, where they drank the whisky, built a fire, cooked and ate supper. Appellee testified that he and his alleged accomplices left the deceased sitting under the tree at 6:30 o'clock p. m.; however, a witness for the Commonwealth testified that at 7:30 o'clock that evening he heard the voices of three or

four persons at the place of the alleged murder; and although it was too dark to identify them by sight, he saw the glow of coals of fire and recognized the voice of the deceased, who was cursing in a loud tone, and who said: "I am not afraid of any of you sons-of-bitch-es." The evidence for the Commonwealth further shows that on the day after the body was found appellee and Oscar Perry, Jr., appeared at the home of Edgar Bartley, appellee's brother-in-law, in Cincinnati. Bartley testified that appellee told him, in the presence of his wife and father-in-law, that appellee had separated from his wife, was on his way to Indiana to look for work, and inquired of him the best way to get to Indiana. At that time the witness was eating supper in the kitchen, but shortly thereafter departed for his place of employment. He stated that appellee followed him into the hall and, in the presence of Perry but out of the presence of the witness' wife and father-in-law, told him that what he had previously stated was not true; that actually he had to leave Corbin because of some trouble he had gotten into; he then related that he, his alleged accomplices, and Shelton were "down past Curve Hill drinking;" that they built a fire, cooked, ate, and engaged in a fight, resulting in Shelton's being knocked into the fire; that appellee and his alleged accomplices, in fright, left the scene of the trouble. The evidence for the defense contradicts that of the Commonwealth in most material points, but with that we are not concerned, because the Commonwealth's right to have the case submitted to the jury rests solely on the evidence recited above. The Commonwealth contends that, although the evidence establishing the corpus delicti was entirely circumstantial, it was sufficient to submit the case to the jury; and that the circumstantial evidence connecting appellee with the case, coupled with his admission to his brother-in-law in Cincinnati, was sufficient to establish that he was at least one of the perpetrators of the crime. Counsel for appellee argues that the evidence on neither of these points is sufficient to submit the case to the jury.

The facts of this case are so parallel with those in Napier v. Commonwealth, 306 Ky. 75, 206 S. W. 2d 53, that a discussion of the law and its application to the evidence would require virtual verbatim quotation from

that opinion. If any distinction can be made between the two cases, the facts of this case are slightly stronger for the Commonwealth than those in the Napier case. Therein we held the evidence to be sufficient to submit the case to the jury and to sustain the conviction, although the judgment was reversed because of an erroneous instruction. On the authority of that decision, we hold that the Trial Court erroneously sustained appellee's motion for a peremptory instruction, and the law is so certified.